Show them around the corner where they are. All right, Mr. Baker, we're ready when you are.  Good morning. Morning. Your Honor, this is a case about two people who have not had an opportunity to present their case at all. Their case has been dismissed before any type of factual discovery has occurred. And they have actually pled very substantive and material allegations in their complaint that creates significant factual issues. The dismissal of this case was done without any basis or any statements as to why the motion for new trial was denied without any reason or explanation for what had happened. And we believe that the factual allegations that have been made are significant and should be pushed forward to another process in the case. The Smithers, the two of them, obtained a home equity loan in 2006. They got divorced in 2007. Patricia Smither got the home. She got behind Bank of America sent a notice of acceleration on June 25, 2009. Very key date, June 25, 2009. Bank of America then went forward because it was a home equity loan in Texas to get a order of foreclosure from the State District Court. That was voluntarily dismissed for reasons that are not in the record, that we don't know, and we have no idea why they did it. But it was voluntarily dismissed in December of 2009. There were no payments made on the loan. Nothing happened on the loan. It all sat until 2016 when November 6 of 2016, DITAC, who had the loan assigned to it, then filed another order for home foreclosure in the State District Courts in Harris County. We, at that point in time, moved to stop the foreclosure. The TRO was granted. The allegations were that they were well past the four-year statute of limitations of the Texas Property Code, Section 16.035B, which requires that any type of foreclosure on a home mortgage loan must occur within four years of the maturity date, and the loan matured on June 25, 2009, when it was accelerated and never de-accelerated. DITAC filed an answer in State Court. DITAC then removed the case to federal court. DITAC then filed a motion to dismiss. Under the federal rules, the Smithers had 21 days to file an amended complaint. Rule 15 gives them 21 days from a responsive plea. They filed an amended complaint within 21 days, which has material and substantial allegations, factual allegations that occurred. Now, the argument DITAC is arguing that the voluntary withdrawal of its notice of acceleration in December of 2009 was a rescission or abandonment of its notice of acceleration. Now, keep in mind, that is the only fact that has been pled or alleged by DITAC, is they voluntarily withdrew it, and because of that, the notice of acceleration was withdrawn, it was de-accelerated, it was rescinded, and therefore, there was no statute of limitations that started. Texas law is still developing on this area, but I think under Texas law, there has to be some indication in the record that they actually intended to do that. I'm going to get to this, but in March of 2010, March of 2010, Bank of America, that supposedly had withdrawn its notice of acceleration voluntarily, in December of 2009, began reporting on John Smither's credit report that the loan was in foreclosure status. They did it, it was reported to TransUnion, it was reported to Equifax, it was reported to Experian, and it continued to be reported for years. In fact, only until recently has it stopped, apparently. I'm not even sure they've stopped reporting it this time, but they have reported it, not as being delinquent, but as in foreclosure. And the only way you get to foreclosure is to have an acceleration. Now, DITEC is also now in the district court. We filed a motion, the Smithers filed a motion to amend their complaint. It was filed, and somehow or another, it was underlined as unopposed instead of opposed. And DITEC immediately filed a response saying that we had not contacted them, which is correct. But then later on, DITEC filed a response saying that they did not contest the amended complaint because it complied with Rule 15. Now, they changed positions on that quite a bit later. But they have said, and they should be judicially stopped from a judicial admission they made in the case, that the—and that was in February 29, 2016. It's a record on appeal, number 149. DITEC is unopposed to plaintiffs filing an amended petition under the purview of Civil Procedure 15. Defendant does not dispute that plaintiffs may amend as a matter of course within 21 days after service of a response to pleading or 21 days after service of a motion under Rule 12b, whichever is earlier. Then they came along May 26, 2016, and actually changed their position on that, saying that no, they filed an answer in state court, and that answer in state court didn't require us to file an amended pleading within 21 days of their answer in state court. Now, it's our position that this is just—first of all, they can't change positions like that. They're stopped from doing it. And secondly, it does—it's just wrong. It's got to be wrong. The response in state court in Texas is not a response to pleading. It doesn't require anything. In fact, the response, the DITEC file only says, DITEC specifically denies each and all the allegations in plaintiff's petition and respectfully requests that plaintiffs be required to prove all claims and allegations asserted against DITEC in this action. That's all it says. An answer in federal court requires a party to plead to each and every allegation so that the other side is put on notice. Some type of notice that then there is a deficiency, there's something that needs to be corrected. That did not happen in the state court, in the answer, the general statement that they filed in state court. There's absolutely nothing that the Smithers had to indicate that there was any concern at all with what was—with the pleadings at that time. The only way the Smithers were going to know anything at all is if they had some type of magical mystery genie to help them understand what was going to happen later on after DITEC removed it to federal court. So DITEC files an answer in state court, which is actually a little unusual because in most of these cases they don't file an answer in state court. But they file an answer in state court, remove it to federal court, and then file the motion to dismiss. Because if their allegations are correct or if their arguments are correct, then this is getting around the federal rules completely. Because a party, if it starts in state court, files an answer in state court, removes it to federal court, all they have to do then is wait the time period, more than 21 days, file a motion to dismiss. But wait a minute. So what you want us to say is that this time-honored tradition in the state court of filing a general denial is not a response of pleading? Yes. I don't – I'm not aware of any cases in federal court that say an answer in state court is a response to pleading because it's so different from an answer in federal court. Well, it's very different, but I mean you want us to say as a matter of law a general denial filed in state court is not a response of pleading? I don't believe it is, at least as far as Rule 15a goes. Well, it certainly – we'd get some press for that. Well, but then you take – it puts the smithers in a position. This motion to dismiss that was filed, okay? If DITAC does not consent, they did consent, but assume they don't consent, and in this case the court never even acted on it, then when that motion to dismiss was filed, they win. That's – they win by default because we don't have any ability then to amend the complaint. And that's exactly what they're arguing here is that we lose by default because they filed an answer in state court which had nothing in it at all. It put us on any notice. They come along after the time period is effectively run, file a motion to dismiss and say, King's Excess, you don't have a right to respond or to address our motion to dismiss by amending your complaint. I – that's a tough pill to swallow. If that's the case, then people are going to start manipulating the situation a lot more than if they understand what they can do. If they understand they can file an answer in state court, wait the time period, move it to federal court, and then file a motion to dismiss. And the other side has no opportunity by right to file any type of responsive pleading at that time. And if you don't consent and the court doesn't act on it, you've lost, even if you've got good arguments. Now, they – in all of their arguments, what I'm pointing out to the court, in all of their arguments, they have not addressed the amendments or the allegations made in the amended complaint. That amended complaint is a live pleading. It is a live pleading. It was filed within the time period. DITAC never made a motion to strike it. DITAC agreed to it. They consented to it in a pleading. They should not be allowed to change their position at a later point in time. They are stopped to do that. The amended complaint goes through and lists multiple things. And I already mentioned one of them, but there was alleged withdrawal. That's the only thing that's been done here, alleged withdrawal of this notice of acceleration in December of 2009. March 2010, TransUnion reported, very specifically, as I said, foreclosure initiated. Equifax, May of 2009, 2013, reported foreclosure proceedings have started. Bank of America continued to report this loan as being in foreclosure. If the notice of acceleration had been withdrawn, then they are violating Texas debt collection laws, their debt practices laws, by making those reports to the credit reporting agency. They cannot have it both ways. They can't say, we are not in a foreclosure status because we have withdrawn our notice of acceleration, while at the same time reporting Mr. Smither as being in foreclosure. And in foreclosure, one of the worst things that can happen to you on a credit report is having your home mortgage very delinquent, which they reported, or putting you in a foreclosure status. That's just the death toll. Your credit scores plummet. I've tried a number of those cases. In this case, again, DITEC is trying to equate and say, we withdrew it, and therefore, we rescinded it. Now, there is some case law that they have cited to. And I'll just bring the attention to the court. That case law deals with summary judgment situations, not a motion to dismiss. There is confusion that they have even raised in their brief where they said once they made the allegations, it was up to the Smithers to come back and present material facts that support their position. We're not in a summary judgment. In fact, even Judge Gilmour, in her memorandum that she filed in the case, said summary judgments cannot be decided with disputed facts. She also says in her memorandum that she filed that if you're going to treat a motion to dismiss as a summary judgment, the other side has to be put on notice that additional information can be presented. That never occurred. It's never disputed that that occurred. So we've got a situation here where there was a complaint. There was a motion to dismiss. There was an amended complaint filed within 21 days that had some very significant material allegations that appear to be not addressed by the court at all. They are completely not addressed by DITAC in any of its briefing before this court. They have not addressed any of the issues in the amended complaint, basically taking the position it's not a life pleading, even though they consented to it, and just said you lose. You lose on an incredible technicality here because we filed an answer in state court that said nothing in it other than we deny everything. We filed a motion to dismiss that had specific allegations in it, and you don't get to respond to that. Now, I pretty much think I'm out of time, unfortunately, but I would also say there are – I appreciate your time. All right. Well, you've reserved your rebuttal time. Come back up. Thank you. I've got about ten seconds. All right. Thank you. Ms. Garza? May it please the court. My name is Catherine Garza, representing Appellee DITAC Financial, LLC. This is a case about debtors who incurred $404,000 of debt secured by property in the Galleria area of Houston. Appellants have failed to make payments since 2009 despite their obligations to do so under the note and the deed of trust. Because of appellant's delinquency, DITAC filed a foreclosure action on November 6, 2015. Within just 14 days, appellants filed the instant case to prevent the foreclosure from occurring, arguing that DITAC is barred by the four-year statute of limitations based on its predecessor in interest, Bank of America, sending a notice of acceleration back in 2009. It is worth noting that it benefits appellants to continue this litigation for as long as possible so that Ms. Smither can continue to live at the property free of mortgage payments and free of rent and to further delay the inevitable foreclosure proceedings. DITAC's position is simple. On the face of the petition, appellants alleged that Bank of America, or excuse me, appellants judicially admitted the fact that Bank of America, after filing its foreclosure action based on the 2009 acceleration, voluntarily dismissed that action. Under Texas law, voluntary dismissal constitutes abandonment, resetting the statute of limitations, and restoring the note to its original condition. Judge Gilmour's dismissal of appellant's petition was proper. She simply applied precedent to an undisputed fact. In Denvina v. City of Hearst, acceleration was found when a creditor non-suited its claims. The court opined that the non-suit had the effect of notifying the debtor of the creditor's intent to abandon acceleration. Relying on Denvina, the Western District of Texas similarly found in Bitterroot Holdings v. MTGLQ Investors that acceleration had been abandoned based on the defendant's predecessor in interest, City Mortgage, voluntarily dismissing its foreclosure claims without prejudice in state court. This case is identical. Bank of America, DITAC's predecessor in interest, voluntarily dismissed its 2009 foreclosure action, thereby abandoning its previous acceleration, resetting the statute of limitations, and restoring the note to its original condition. Other courts in the Fifth Circuit have also granted a defendant's 12B6 motion when abandonment is evident on the face of the pleading. Those cases are Costello v. U.S. Bank Trust, in which the Southern District of Texas granted a defendant's motion to dismiss on the basis that plaintiff's limitation argument failed as a matter of law and amending would be futile when abandonment was found twice before, once by a non-suit and the second time by the sending of a notice of rescission. So that by the time U.S. Bank served a third notice of acceleration in August of 2015, the previous accelerations by its predecessor in interest had been abandoned and the cause of action had not yet accrued. Similarly, the Southern District of Texas granted a defendant's 12B6 motion in Curry v. Aquin Loan Servicing, holding that an amended complaint failed to allege sufficient facts to plausibly support the conclusion that a statute of limitations had run when a March 11, 2011, notice of acceleration had effectively abandoned any previous acceleration. As demonstrated by these cases, Judge Gilmour's dismissal of plaintiff's petition was proper. It was also proper for the court to impliedly deny appellant's motion for leave to amend. Appellants now argue that their petition was a live pleading, but that is not the case and that is not the party's understanding. In fact, the Record on Appeal for the Joint Discovery Plan, that's Record on Appeal, page 157, shows that when it lists motions that were pending before the preliminary hearing, it said defendant's motion to dismiss and plaintiff's motion for leave to amend, plaintiff's original petition, could be rolled on at the initial pretrial and scheduling conference. That shows that appellants at the time did not believe that their pleading was in fact live. Appellants would have you believe that their pleading was live based on Rule 15A, but Rule 15A allows the party to amend once as a matter of course within 21 days of a responsive pleading or 21 days after a 12B, E, or F motion is filed, whichever is earlier. Those are the key words. And as appellants argued, DITAC did in fact file an answer in December of 2015 so that by the time appellants filed their motion for leave to amend in February 3rd of 2016, more than 21 days had elapsed by that time. Second, leave to amend is not automatic and may be denied when amending would be futile, as it was here. Appellants' first amended petition was more of the same. The additional facts asserted were with respect to alleged statements made by DITAC or its predecessor, Bank of America, to third-party credit agencies. But these credit reports do not change the fact that Bank of America voluntarily dismissed its 2009 foreclosure action. Appellants rely almost exclusively on the case Calen v. Deutsche Bank Trust, but that case is distinguishable. In Calen, the court found that Deutsche Bank did not rescind its acceleration when it dismissed the 2008 foreclosure proceeding because it relied on the same November 6, 2007 notice of acceleration in filing its second foreclosure action in 2009. In attempting to reconcile the case Denbighna and Bitterroot with Calen, Boren v. U.S. National Bank Association is instructive. There, this court, the Fifth Circuit, noted that Texas courts frame abandonment in terms of waiver. Waiver can be expressed through clear repudiation of a right or implied through conduct. Appellants interpret Calen to come up with their own rule that if a note holder takes any actions inconsistent with an intent to abandon, such as making statements to third parties, such as the credit agencies, then the obligor no longer has unambiguous notice that it may resume to make payments and installments. But Calen is actually about reliance and waiver. In Calen, the court held that it was clear that Deutsche did not relinquish its right to acceleration when it relied on the same notice in its second foreclosure action. Calen is the classic you-can't-have-your-cake-and-eat-it-too. Appellants try to analogize their case with Calen, arguing that the court should assume that DITEC's 2015 action was based on Bank of America's 2009 notice of acceleration or, alternatively, that statements supposedly made to third-party credit agencies were inconsistent with its intent to abandon such that no such abandonment occurred. But with respect to their second argument, the credit reporting argument, it's helpful to look at Calen and the facts here side by side. In Calen, Deutsche took an overt legal action, the bringing of a second foreclosure suit, relying on the 2007 acceleration for the purpose of foreclosing on the property. There, Calen was notified of the action through service of process. Here, the complaint of conduct in the first amended petition are statements purportedly made by DITEC or Bank of America to third-party credit bureaus or agencies for the purpose of alerting other creditors of the debtors' credit risk and delinquency. In addition, it's not as if DITEC or Bank of America sent these credit reports to appellants. They have no control over when appellants pull their own credit reports. So it was not a direct action or statement by DITEC to appellants in any sort of way. And viewing these discrepancies between Calen and the instant case and the case law with respect to the lender's unilateral right to accelerate and abandon such acceleration, it is clear that statements made to third-party credit agencies or bureaus does not rise to the level of disavowing Bank of America or DITEC's right to abandon acceleration. And with respect to their other argument that an assumption should be made that just because DITEC did not allege that a notice of default or notice of intent to accelerate was sent prior to its 2015 foreclosure action, that it should be assumed that it was based on Bank of America's 2009 notice of acceleration. No assumption needs to be made. The facts are of public record. The appellants included the cause number of the 2015 foreclosure action, and a cursory review of that action would reveal that DITEC did, in fact, In conclusion, for all of the reasons contained in Appellee's brief and made today in oral argument, the dismissal of Appellant's petition and implicit denial of Appellant's motion for leave to amend was proper. Appellee respectfully requests that this Court affirm the District Court. All right. Thank you, Ms. Garner. Thank you. I appreciate your presentation. Back to you, Mr. Baker, for rebuttal. You know, it's quite evident that they are relying solely on the fact that they withdrew this notice of – this lawsuit, the order for foreclosure in December of 2009. What's troubling here is they're arguing additional facts outside the pleadings. They're arguing, well, we sent a notice of acceleration April 2015. That may be true. That's not in the pleadings. And the problem is why did they – what was the reason they withdrew the order of foreclosure? This happens all the time. Properties get posted for foreclosure and they get withdrawn and they get reposted the next month and the next month. We don't know if there was a defect in what was pled, a defect in the notice, a defect in something else. They wanted to change attorneys. There are a number of reasons why these properties get posted, why they get orders of foreclosure that are filed and withdrawn. There is nothing in the record to show why that happened. What's in the record is that Bank of America reported within three months to the credit reporting agency that the house loan was in foreclosure. Now, there's an argument here, and this apparently underlies a lot of this, that, my gosh, should our client be entitled to get a free house? Well, she doesn't want a free house. She's trying to negotiate something. That's outside the pleadings. That hasn't – effectively, that's been shut down. Okay? And if you get into all of that, that's not what's happening here. But that's the effect of Texas law, good, bad, or indifferent. That's what the law says. That's exactly what the law says. There are not cases out there that they – the cases that they have cited do not have any type of facts that this case has where you've got a withdrawal, and then you've got very overt acts saying the house is in foreclosure. Let me ask you this question. What is the precise holding you want our panel to articulate based on the posture of this case? What is it you want us to hold? We want you to reverse the order dismissing the case and send it back down to trial. Because? Because. What's the legal holding? What is the holding you want us to make? What is it – we've heard you in terms of what you've said about the Texas procedure and so on and so forth. I'm asking you straight up, if you want, what is it you want us to write? What is it you want us – what is the holding in this case? Your Honor, what we would like is for the court to find that there – under a motion to dismiss, if there are material allegations that have been pled, that a motion to dismiss is not proper under Fifth Circuit standards. The holding should be that the fact allegations in the amended complaint, which was timely filed, are – create material and significant factual issues that are not subject to a motion to dismiss, and it should be sent back to the district court for the district court to proceed forward with the case. And that holding would be based on your best case, which is? The Callan case, and then the other – we've cited the other cases in our brief. We filed an amended complaint, and the amended complaint has material and significant allegations in it, which was timely filed and was consented. There was no response to the fact that they consented to it. I found that, again, interesting. No response at all. And there again has been no response to the allegations. Well, there was some response as far as the credit allegations, but that is a material difference in any of these other cases that they have found. Now, the – and this is – it's a problem because we don't know – and see, they have won at this point in time without any understanding of what the records in Bank of America show. Their argument that the withdrawal – and their records make sure it was done for other reasons. Their records should show something was going on because they sent a credit report out in March of 2010. They sent another credit report out in March of 2013. At least they did send out – at least three different times they sent out information to credit reporting agencies each single time – each time saying loan is in foreclosure. What do their internal records show? We have had no opportunity to make that discovery. Now, the records may show something that actually supports their position. I don't know. But my clients should be entitled to that. My clients should be. And, again, I come back and finally say if, in fact, the notice of acceleration was withdrawn, then the amended complaint – the allegations in the amended complaint that say that they have violated debt collection laws by reporting an unaccelerated loan in foreclosure. If you've got a red light, I'll give you one sentence to sum up the point. The holding should be, Your Honor, that the amended complaint that was timely filed presents material factual allegations that are not subject to a motion to dismiss. And, therefore, the order granting the motion to dismiss in the new trial should be reversed and sent back to the district court. All right. All right. Thank you, sir. Thank you very much, Your Honor. Mr. Garza, both sides for your briefing.